UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER PIERCE-COOKE,

    Plaintiff,

    v.                                    CIVIL ACTION NO. 23-10367-MPK[1]

BRUCE A. WHEELER,

    Defendant.

MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT (#20)

KELLEY, U.S.M.J.

I. Introduction

In an effort to recover damages for the fraudulent interception of a $208,951.98 wire transfer he was meant to receive, plaintiff Christopher Pierce-Cooke brings suit against defendant Bruce A. Wheeler, alleging common law claims for fraud, conversion, unjust enrichment, and negligent misrepresentation, in addition to claims under Mass. Gen. Laws ch. 93A and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

Pierce-Cooke moves for partial summary judgment (#20) on Count V of his Complaint (#1), which alleges "Unfair and Deceptive Business Practices under M.G.L. 93A." (#1 at 8.) In his Motion, Pierce-Cooke asserts that the undisputed facts demonstrate that Wheeler was a knowing participant in a fraudulent scheme to divert funds owed to him (Pierce-Cooke) for the

---

[1] With the parties' consent, this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c). (#9.)

sale of his shares in a business.  Wheeler opposes (#24), contending that Pierce-Cooke has not met his burden of demonstrating undisputed facts which entitle him to judgment as a matter of law.

This court agrees, and for the following reasons denies Pierce-Cooke's Motion for Partial Summary Judgment.

II. Facts

The facts set out below are undisputed, unless otherwise noted.[2]

A. Pierce-Cooke Negotiates the Sale of Walking the Talk LTD
   But Never Receives the Funds to Be Wired to Him in Exchange

After negotiating the sale of a business, Walking the Talk LTD, Pierce-Cooke was due to receive $208,951.98 by wire transfer from a Rabobank account to his Citibank account.  (#22 ¶¶ 1-2.)  He never received the funds.  Instead, a third party hacked his email account and on or around June 9, 2022, transferred the funds to a Bank of America account ending in 5635 (the "BOA 5635 Account") with which he had no association.  *Id.* ¶¶ 3-4.

B. Wheeler Is Contacted by Qingdao Harvest Imp & Exp Co., Ltd. and Agrees
   to Open a Corporate Bank Account and Receive Product Orders on its Behalf

Months before this transfer, on February 14, 2022, Wheeler, the owner and manager of ProShield Exteriors LLC—a home improvement company located in Hanover, Massachusetts—received an email from someone named Sunny Deng.  (#22 ¶ 8; #24-1 at 11 ¶¶ 1-2.)  The email read:

---

[2] The facts are drawn from: (1) Pierce-Cooke's "Statement of Undisputed Material Facts in Support of His Motion for Summary Judgment" (#22); the (2) "Declaration of Colin J. Zick, Esq." (#23) and certain exhibits attached to it, including the "Affidavit of Christopher Pierce-Cooke" (#23-16); the (3) "Declaration of Barbara L. Horan, Esq." (#24-1) and certain exhibits attached to the Declaration, including the "Affidavit of Bruce A. Wheeler" (#24-1 at 11-14); (4) Wheeler's "Statement of Facts in Opposition to Plaintiff's Motion for Partial Summary Judgment" (#24-2); and from the (5) "Second Affidavit of Bruce A. Wheeler" (#27).  Although the original "Affidavit of Bruce A. Wheeler" was unsigned, *see* #24-1 at 14, Wheeler later filed a signed affidavit which is identical to the first.  *See* #26.

Hello,

Please would you like to cooperate with our company to become our business partner/representative in USA

We are ready to be paying 4% commission on each transaction.

Please get back to us for more information

*NB: Reply to Email: sales@qingdaoscooters.com*

Thank you.

*Sunny Deng*
Import/Export Manager
------------------------------------------------------------

*QINGDAO HARVEST IMP & EXP CO., LTD*
*No. 115 Mingyuan Avenue North, Yongkang, Zhejiang*
*Wechat:* wxid_5oxsyopiz9u922

Email: *sales@qingdaoscooters.com*

(#23-5 at 2) (emphases in original.)  Wheeler replied to Deng's email inquiry as follows:

Hello – I received your message a moment ago.  What does becoming a business partner with your company entail or consist of?  Best – Bruce

Bruce Wheeler
Managing Owner
**ProShield**
**1100 Washington St., Suite #1 HANOVER**

(#23-6 at 3) (emphases in original.)  In response, Deng described his company, Qingdao Harvest Imp & Exp Co., Ltd ("Qingdao Ltd."), as an experienced, expanding manufacturer of electric wheelchairs, scooters, bikes, and mobility equipment in search of a business partner in the United States.  *See id.* at 2-3.

Deng presented Wheeler with a business proposition where, in return for helping register a new company in the United States, receiving product orders from the United States and Canada, sending monthly reports, and opening a corporate bank account for the newly-registered

[3]

company, Wheeler would receive a 4% commission "on any order received by [him]." *Id.*

Wheeler and Deng exchanged emails over the next several days, and on February 18,

2022, Wheeler indicated that he "fel[t] comfortable moving forward." (#23-7 at 4.) In his email,

Wheeler made several requests, including:

> 1. the past 12 months revenue figure for US and Canada you indicated was
> $3,680,000. I'd like to see the monthly figures and confirm that all future US and
> Canadian revenues would be flowing through the new LLC and associated
> business checking account.
>
> . . .
>
> 4. I assume we will be entering into some form of contractual agreement stating
> mutual responsibilities and compensation. Please advise on that and thank you. I
> look forward to your reply.

*Id.* Deng provided Wheeler with both items over the following days. *Id.* at 2-3; #24-1 at 12 ¶ 5.

On February 21, 2022, Wheeler executed the "Agent Agreement" he had received from

Deng, registered "Qingdao Harvest, LLC" as a new corporation with the Secretary of the

Commonwealth of Massachusetts on February 24, 2022, and shortly thereafter, on March 2,

2022, opened the BOA 5635 Account on behalf of Qingdao Harvest, LLC. (#22 ¶¶ 5, 15, 19;

#24-1 at 12 ¶ 6; *see* #23-7 at 2, 12-18.) That same day, March 2, 2022, Wheeler sent Deng the

signed Agent Agreement containing the BOA 5635 Account's routing and account numbers,

along with Qingdao Harvest, LLC's articles of incorporation and copies of his driver's license.

(#22 ¶ 23; *see* #23-7 at 2.)

In registering Qingdao Harvest, LLC, and in opening the BOA 5635 Account, Wheeler

listed himself as Resident Agent—or "manager" in the case of the bank account—of Qingdao

Harvest, LLC, and in each instance he used the address of his home improvement business, 1100

Washington St., Suite 1, in Hanover, as the address for the new company. (#22 ¶¶ 20-22; #23-2

at 2; #23-3 at 2.)

[4]

The parties do not dispute that Wheeler opened the BOA 5635 Account for the purpose of

working with Qingdao Ltd.  (#22 ¶ 17; #24-1 at 11 ¶ 3.)

C.  The BOA 5635 Account Receives a Wire Transfer of $208,951.98 and, at Deng's
Direction, Wheeler Remits 96% of the Funds to a Separate Account and Retains 4%

On June 10, 2022, the BOA 5635 Account received a wire transfer in the amount of

$208,951.98, which was described in part as, "Walking The Talk Limite . . . FOR CHRIS

PIERCE COOKE[.]"  (#22 ¶¶ 24-25; *see* #23-8 at 4.)  Deng had emailed Wheeler that morning

asking him to check the account, *see* #23-9 at 3, and Wheeler responded later that day by

confirming that a deposit of $208,951.98 was visible in the account and "processing[.]"[3]  *Id.* at 2;

#24-1 at 12 ¶ 7.

Three days later, on June 13, 2022, Deng directed Wheeler to transfer the wired funds to

a bank located in Hong Kong for a "beneficiary" named Ding Ligong.[4]  (#22 ¶ 26; *see* #23-10 at

11.)  That same day, Wheeler sent $200,593.90—96% of the original $208,951.98 wire described

as "FOR CHRIS PIERCE COOKE"—to Ligong, leaving an available balance of $8,381.09,

roughly 4% of the original wire, remaining in the BOA 5635 Account.  (#22 ¶¶ 28-29; *see* #23-

10 at 7-8.)  As Wheeler explains, he initiated this transfer "pursuant to the terms of [the] Agent

Agreement" and as Deng had directed, on the belief that he was "transferring monies received in

the Qingdao Harvest, LLC account from U.S. and Canada sales of mobility equipment[.]"  (#24-

---

[3] Based on emails they exchanged between late May and June 10 it appears that Deng repeatedly asked
Wheeler for updates on the balance of the BOA 5635 Account in anticipation of the wire transfer.  *See*
#23-9 at 3-11.  In response, Wheeler assured Deng that he was "checking the BOA account multiple times
per day[,]" indicated that he would "set up an email and text alert[,]" and asked whether Deng's client had
"sent proof of funds transfer[.]"  *Id.* at 4, 9.

[4] According to Pierce-Cooke, he never had any business affiliation with Ligong or Wheeler and Wheeler
did not have a legitimate reason to receive any funds for the sale of Walking the Talk LTD.  (#23-16 ¶¶ 2-
5.)  Wheeler explains that before this suit he had no knowledge of Pierce-Cooke, or of Walking the Talk
LTD.  (#24-1 at 13 ¶ 16.)

1 at 12 ¶ 8.)

The next day, on June 14, 2022, Deng confirmed that the transferred funds had been

received and informed Wheeler that he would be receiving further deposits in both the BOA

5635 Account and in a separate account.[5]  (#22 ¶ 30; *see* #23-10 at 3-6.)  However, on June 24,

2022, Bank of America closed the BOA 5635 Account, giving the reason: "due to risk."  (#22 ¶¶

31-32; #24-1 at 12 ¶ 9; *see* #23-12 at 2.)

Pierce-Cooke claims that four days later, on June 28, 2022, Bank of America issued a

cashier's check in the amount of $8,381.09 to "Qingdao Harvest, LLC" of "1100 Washington St,

STE 1, Hanover, MA 02339."  (#22 ¶¶ 33-34; *see* #23-14 at 2.)  According to Wheeler, at no

point did Bank of America disburse funds to him "in the form of a cashier's check to Qingdao,

LLC or to Qingdao Harvest LLC[,]" and he disputes ever having "personally receive[d] or

retain[ed]" any of these funds.  (#24-1 at 12 ¶¶ 9-10; #24-2 ¶¶ 3-4.)

D.  The North Wildwood New Jersey Police Department Initiates a
     <u>Criminal Investigation into the Missing Funds and Contacts Wheeler</u>

Pierce-Cooke reported the missing $208,951.98 wire to the North Wildwood Police

Department in New Jersey, which opened an investigation into the missing funds.  (#22 ¶¶ 35-36;

*see generally* #23-1.)  On August 2, 2022, a North Wildwood Police Department detective

contacted Wheeler, who discussed the details of his arrangement with Deng, including the 4%

commission he was to receive on the $208,951.98 deposited into the Bank of America account he

had opened.  (#22 ¶¶ 36-37; *see* #23-1 at 3.)  The detective gave Wheeler his department email

address and Wheeler said that he would forward any emails between him and Qingdao Ltd. to the

detective. (#22 ¶ 38; *see* #23-1 at 4.)  Following their conversation, however, Wheeler did not

---

[5] It appears that Deng directed Wheeler to utilize other bank accounts, at other financial institutions.  *See* #23-9 at 9; #23-10 at 3.

return the detective's follow-up calls or provide him with any emails, because he "deemed the email exchanges . . . irrelevant to [the] inquiry regarding money laundering." (#22 ¶¶ 39-40; #24-1 at 13 ¶ 15.)

On August 30, 2022, the State of New Jersey charged Wheeler by criminal complaint with money laundering in the second degree and issued a warrant for his arrest. (#22 ¶¶ 41-44; *see* #23-15.) On or about February 10, 2024, Wheeler received notice from the Office of the Prosecutor of Cape May County, New Jersey that the criminal charge against him had been dismissed. (#27 at 1 ¶¶ 3-4; *see id.* at 2.)

According to Wheeler, with regard to his dealings with Deng and Qingdao Ltd., he "acted on his good faith belief" that he was "a U.S. partner, agent, and representative" of the foreign company and "did not intend to facilitate or promote criminal activity[.]" (#24-1 at 11-13 ¶¶ 2, 11-14; #24-2 ¶¶ 5-8.)

III. Legal Standard

Summary judgment is intended "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 450 (1st Cir. 2014) (additional citation and quotations omitted). Under Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." As the Rule allows, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

"Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'" *Green Mountain Realty Corp. v. Leonard*, 750 F.3d 30, 38 (1st

[7]

Cir. 2014) (additional citations omitted). "Once the moving party avers the absence of genuine

issues of material fact, the nonmovant must show that a factual dispute does exist[.]" *Fontanez-*

*Nunez v. Janssen Ortho LLC*, 447 F.3d 50, 54 (1st Cir. 2006) (additional citation and quotations

omitted).

In assessing whether summary judgment is proper, the court must view the record in the

light most favorable to the non-moving party and must draw all reasonable inferences in the non-

movant's favor. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). "Summary judgment is

inappropriate if the evidence 'is sufficiently open-ended to permit a rational fact finder to resolve

the issue in favor of either side.'" *Id.* (quoting *Gerald v. University of Puerto Rico,* 707 F.3d 7,

16 (1st Cir. 2013)).

IV. Discussion

A. Mass. Gen. Laws ch. 93A – Generally

Mass. Gen. Laws ch. 93A "'is a statute of broad impact' that prohibits 'unfair methods of

competition' and 'unfair or deceptive acts or practices in the conduct of any trade or

commerce.'" *Exxon Mobil Corp. v. Atty. General*, 94 N.E.3d 786, 791 (Mass. 2018) (quoting

*Slaney v. Westwood Auto, Inc.*, 322 N.E.2d 768, 772-73 (Mass. 1975)). Specifically, ch. 93A, §

2(a) prohibits unfair methods of competition and unfair or deceptive acts or practices, while § 11

provides that "[a]ny person who engages in the conduct of any trade or commerce and who

suffers any loss of money or property, real or personal," as a result of the sort of unfair methods

of competition, or unfair or deceptive acts or practices, § 2 contemplates may bring an action for

damages. Mass. Gen. Laws ch. 93A, §§ 2, 11.[6] A successful ch. 93A, § 11 claim has three

elements:

---

[6] Pierce-Cooke brings his ch. 93A claim under § 11 of the statute. *See* #30 at 2-3.

(1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method, act or practice caused the loss suffered.

*Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021) (citing *Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.*, 17 N.E.3d 1066, 1074-75 (Mass. 2014)).

What constitutes an unfair or deceptive act or practice is not defined by the statute. As the Massachusetts Supreme Judicial Court ("SJC") has observed, "[s]uch a definition would be impossible" where "'there is no limit to human inventiveness in this field.'" *Kattar v. Demoulas*, 739 N.E.2d 246, 257 (Mass. 2000) (additional citation omitted). Instead, as the SJC has explained and the First Circuit has recognized, "unfair or deceptive conduct is best discerned 'from the circumstances of each case.'" *Anoush Cab, Inc.*, 8 F.4th at 17 (quoting *Kattar,* 739 N.E.2d at 257) (additional citation omitted).

B. Pierce-Cooke's Motion for Partial Summary Judgment

As stated above, Pierce-Cooke moves for summary judgment on Count V of his Complaint, in which he alleges that Wheeler opened the BOA 5635 Account "for a fraudulent and/or deceptive purpose" and diverted funds owed to Pierce-Cooke in violation of ch. 93A. (#1 ¶¶ 38-41.) As Pierce-Cooke argues, "the undisputed facts show that Wheeler knowingly participated in [this] scheme" and "received a 4% commission for his role in the fraud"—acts which, according to Pierce-Cooke, "constitute unfair and deceptive acts or practices under ch. 93A[.]" (#21 at 2.)

Wheeler does not dispute that he opened the BOA 5635 Account or transferred all but 4% of Pierce-Cooke's funds to a separate account, nor does he dispute that his actions caused Pierce-Cooke to suffer the loss that he did. (#24 at 1.) Wheeler asserts, however, that in taking these steps at Deng's direction, he was deceived by Deng and the representations Deng made on behalf

[9]

of Qingdao Ltd., and that he unknowingly "completed the fraud" Deng orchestrated against

Pierce-Cooke. *Id.*

Wheeler advances two arguments in opposing summary judgment: (1) that Pierce-Cooke

cannot, as an initial matter, "identify a predicate commercial transaction between [Pierce-Cooke]

and Wheeler" in which to root his ch. 93A claim, and (2) that there are genuine issues of material

fact as to whether Wheeler committed any unfair or deceptive act or practice.  (#24 at 2.)  These

arguments are addressed in turn.

### 1. Existence of a Commercial Transaction

Wheeler first argues that "[t]he diversion of funds from Walking the Talk to the Qingdao

Harvest bank account opened by [him] was not a commercial transaction in the sense required by

c. 93A[,]" and, for this reason, the statute does not apply.  (#24 at 3.)  Pierce-Cooke, in his Reply,

calls Wheeler's argument "a clever attempt to spin his bad acts into a defense," which he claims

fails as a matter of law where Wheeler "created the very relationship" between Pierce-Cooke and

Wheeler by having facilitated the fraud.  (#30 at 2.)

As stated above, ch. 93A "applies to transactions that are commercial in nature between

parties engaged in 'trade or commerce[.]'"  *Allstate Ins. Co. v. Fougere*, 79 F.4th 172, 186 (1st

Cir. 2023) (citations omitted).  For this reason, "for a c. 93A claim to remain viable . . . there

must exist some 'commercial relationship' between the parties or the plaintiff[] must demonstrate

that the defendant's actions interfered with 'trade or commerce.'"  *Spencer v. Doyle*, 733 N.E.2d

1082, 1087 (Mass. App. Ct. 2000) (quoting *First Enterprises, Ltd. v. Cooper*, 680 N.E.2d 1163,

1165 (Mass. 1997)) (additional citation omitted); *see Small Justice LLC v. Xcentric Ventures

LLC,* Case No. 13-cv-11701, 2014 WL 1214828, at *9 (D. Mass. Mar. 24, 2014).  Here, although

Wheeler did not share a commercial relationship with Pierce-Cooke in the traditional sense, the

[10]

undisputed facts show that Wheeler interfered with "trade or commerce" when he facilitated the interception of funds owed to Pierce-Cooke for the sale of Walking the Talk LTD and thereby "inject[ed] himself in a marketplace transaction." *First Enterprises, Ltd.*, 680 N.E.2d at 1165.

"A commercial transaction need not occur in the ordinary course of a person's trade or business before liability under G. L. c. 93A will be imposed." *Milliken & Co. v. Duro Textiles, LLC*, 887 N.E.2d 244, 260 (Mass. 2008) (citing *Begelfer v. Najarian*, 409 N.E.2d 167, 176 (Mass. 1980) for the proposition that the question whether parties were engaged in "trade or commerce" such that their actions transpired in a "business context" requires evaluating, among other factors, "the nature of the transaction . . . the activities engaged in by the parties . . . and whether the participant played an active part in the transaction."). Though he may not have been a party to the original transaction between the operator of the Rabobank account and Pierce-Cooke, Wheeler's creation of the BOA 5635 Account and his subsequent redirection of the funds intended for Pierce-Cooke guaranteed the transaction's disruption.

Thus, "despite the lack of strict privity" between them, and despite the fact that they were otherwise unknown to each other, Wheeler interfered with "trade or commerce" when he opened the BOA 5635 Account and redirected the $208,951.98 wire. *In re Pharm. Indus. Average Wholesale Price Litigation*, 582 F.3d 156, 193 (1st Cir. 2009) (applying the standard articulated in *Spencer* to the indirect relationship shared by two parties, and drawing a comparison to *First Enterprises, Ltd.* and its discussion of the circumstances in *Kirkland Constr. Co. v. James*, 658 N.E.2d 699 (Mass. App. Ct. 1995)).

### 2. Unfair or Deceptive Acts or Practices

Wheeler also argues that where he had "no knowledge of the real nature, location, source, ownership, or control of the monies deposited into the bank account he opened for Qingdao

Harvest, LLC[,]" there are genuine issues of material fact "regarding the alleged unfair and deceptive practices" at issue in this case.  (#24 at 2, 6.)  Pierce-Cooke responds that by "facilitating the fraudulent transfer of funds intended for [him] to a bank account Wheeler opened under the name of Qingdao Harvest, LLC" and later receiving a 4% commission for his role in doing so, Wheeler's actions constituted unfair or deceptive acts or practices under ch. 93A.  (#21 at 3).

In determining what conduct "rises to the level of an unfair act or practice[,]" courts look to:

> (1) whether the conduct is within 'at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers' or other businesses[.]

*H1 Lincoln, Inc. v. South Washington Street, LLC*, 179 N.E.3d 545, 557 (Mass. 2022) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.,* 321 N.E.2d 915, 917 (Mass. 1975)) (first alteration in original).  What conduct qualifies as "deceptive" "is less clearly defined in the case law[,]" *Incase Inc. v. Timex Corp.*, 488 F.3d 46, 57 (1st Cir. 2007) (citations omitted), but the SJC has, not surprisingly, found that fraudulent misrepresentation or common law fraud can form the basis of a claim of deceptive practices under ch. 93A.  *See H1 Lincoln, Inc.*, 179 N.E.3d at 560 (collecting cases).

Pierce-Cooke claims that Wheeler committed an unfair or deceptive act or practice by knowingly diverting his money.  The fact remains, though, that Wheeler claims he did not know that he was participating in a fraud.  Viewing the facts in the light most favorable to Wheeler, as the court must do at this stage, Wheeler was an unwitting accomplice to a scheme to divert Pierce-Cooke's funds.  Even if the court were to find that the summary judgment record demonstrates that Wheeler's conduct was negligent, the SJC has held that "'mere negligence' is

[12]

not sufficient for a violation of Chapter 93A, instead requiring 'something more' -- namely

'extreme or egregious' negligence." *Anoush Cab, Inc.*, 8 F.4th at 18 (quoting *Baker v. Goldman,*

*Sachs & Co.*, 771 F.3d 37, 51 (1st Cir. 2014)) (additional citations omitted); *see Klairmont v.*

*Gainsboro Rest., Inc.,* 987 N.E.2d 1247, 1257 (Mass. 2013).  Whether Wheeler's actions rise to

this level of "extreme" negligence is not something the court can decide on this record.

In short, on this very limited record, there are material questions of fact, and summary

judgment is not appropriate here.

V. Conclusion

For the above reasons, Pierce-Cooke's Motion for Partial Summary Judgment (#20) is

denied.


November 20, 2024                                                     /s/ M. Page Kelley
                                                                     M. Page Kelley
                                                                     United States Magistrate Judge

[13]